## ABIEL TERRY AND OTHERS, Appellants, *versus* GERSHOM FOSTER AND ANOTHER, Executors.

To exclude a child from a distributive share in the estate of the testator, it is not necessary that such child should have a legacy in the will; it is sufficient if it appears by the will that the testator had not forgotten the child.

THIS was an appeal from a decree of the judge of probate for this county.

The *appellants* were the grandchildren of *Nathaniel Foster*, deceased, who, on the 7th day of May, 1791, made his last will and testament, at which time the mother of the appellants, —— *Terry*, and daughter of the testator, was dead; and the *appellants* claimed, before the judge of probate, to have an equal proportion assigned them in the estate of their grandfather, the testator, as though he had died intestate, alleging that they had no legacy given them in the will. The judge was of opinion that they had a legacy given them in the will, and decreed that they were not entitled to come in for such proportion of their grand [ * 147 ] father's * estate as they claimed, but that the will should stand.

The *appellees* were the sons and the principal devisees of the testator, and to whom he gave all his real and most of his personal estate; they being appointed his executors, and charged with the payment of divers small legacies to his children and grandchildren.

After the usual preamble, the testator says, " As to my temporal estate, which God hath given me, after all my just debts shall be paid by my executors, whom I shall hereafter name, I give as followeth."

He then devises his real estate to his two sons, the *appellees*; then follows a bequest to the children of his son *John Foster*, deceased, namely, to *William Foster* 20 dollars, to *Peter Foster* 12 dollars, to *Elizabeth Denham*, daughter to his son, deceased, 20 dollars. He next bequeaths to his daughter *Mary Foster* 15 dollars. Then fol-

lows the clause upon which the question in this case arose, and which is in the following words:—" Item, *I give to my daughter* Mary Russell *five dollars, and to my daughter* Bushop *five dollars, to my grandchildren of my daughter* Terry's, *deceased, to be paid to them when the youngest of them come of age.*"

He next bequeaths to his daughter *Martin* 10 dollars. Then " to his *dear* daughter *Abigail Foster,* who then lived with him, and had been a kind and tender nurse in his lonesome state of widowhood, night and day, in his long confinement," divers articles specified, £30 in money, and the use of a part of his dwelling-house and garden, and an annuity of twenty dollars while she remained unmarried, &c.

He then gives to his two sons, the *appellees,* his farming tools, and the stock on his farm, &c., to pay debts and legacies.

* Finally, he appoints them his executors and residuary [ * 148 ] legatees; and concludes by saying that " *as he has now done what he thinks absolutely necessary for the good of his dear family, and for the peace and welfare of their temporal good and happiness,* he recommends to them, as their dying father, to live in love and peace, &c. &c."

The *Attorney-General,* (*Sullivan,*) for the *appellants,* relied on the *8th section of the statute passed* Feb. 6, 1784, (*stat.* 1783, *c.* 24,) in which it is enacted " that any child or children, or their legal representatives in case of their death, not having a legacy given him, her, or them, in the will of their father or mother, shall have a proportion of the estate of their parents assigned unto him, her, or them, as though such parent had died intestate; provided such child, children, or grandchildren, have not had an equal proportion of the deceased's estate bestowed on him, her, or them, in the deceased's lifetime." And he contended that the *appellants* had nothing given them in the will, and therefore were entitled, by the express words of the statute, to come in for a distributive share of the testator's estate, in the same manner as though he had died intestate.

*Parsons,* for the *appellees,* argued that, upon a reasonable construction of the words used in the will, there was a legacy given to the *appellants;* that the sum of five dollars was bequeathed to them; but even if nothing is given, their case is not within the intent and meaning of the statutes which relate to this subject. By an *act passed in the year* 1700, (12 *W.* 3, *c.* 7, § 2,) it was enacted " that any child or children not having a legacy given them in the will of their father or mother, every such child shall have a proportion of the estate of their parents given and set out unto them as the law directs for the distribution of the estates of intestates; pro-

[ * **149** ] vided such child or children have * not had an equal proportion of his estate bestowed on them by the father in nis lifetime." But the preamble shows the intent and object of the enacting clause, and has uniformly been considered by the courts of law as limiting the same. The preamble is in these words: " Whereas, through the anguish of the deceased testator, or through his solicitous intention, though in health, or through the oversight of the scribe, *some of the testator's children are omitted or not mentioned in the will*, many children also being born after the making of the will, though in the lifetime of their parents:" He said it was apparent from this statute, taking the preamble and en acting clause together, that all that was intended, was, that it should appear by the will, that the testator had not omitted any of his children from forgetfulness; his naming the *appellants* in the will shows that he had not forgotten them; and therefore it is immaterial whether he gave them any thing or not; and he cited a case, decided in *Boston*, in which there was a devise to grandchildren, named as the children of two of the daughters of the testator, who were alive at the time of making the will, and to whom nothing was given, wherein the Court held that the will should stand. In the year 1718, some doubts having arisen whether the *act of* 1700 extended to grandchildren, it was by the General Court resolved that it did, and that the law was so to be understood and practised. The *act of February* 6, 1784, was, he said, merely a revision of the former acts, but did not repeal them; they were still in force; and although the last act had omitted the preamble contained in the first, yet all the acts, being *in pari materia*, are to be consid ered and construed together in deciding the question before the Court.

The *Attorney-General*, in reply, said that, as to the case [ * **150** ] cited, the counsel for the *appellees* was * mistaken ; that the case *actually* was a devise to grandchildren after the decease of two daughters, in which the question was, whether the daughters took an estate for life by implication ; and therefore could not govern the case now before the Court; and that he knew of no decision which would conclude in the present case.

He conceded that the statute of 1784 did not repeal the former law ; but by the express and positive words of both the statutes, a legacy must be given, otherwise the children or grandchildren cannot be excluded from a share in the estate of a testator, as though he had died intestate ; and although it may be useful to consult the preamble of a statute for the purpose of explaining what is doubtful or ambiguous in the enacting part, yet where the enacting words are clear, positive, and unequivocal in their meaning, they can never be

controlled by the preamble. The *appellants* bring themselves within the clear, express and positive provisions of both statutes, unless a legacy has been given them by the will : it is obvious that the testator intended to bequeath to them a legacy ; but by mistake he has omitted to mention any sum ; therefore they are entitled to a distributive share, as prayed for.

SEWALL, J. The question is whether, under the statutes, the appellants are entitled to a proportion of the estate of the testator, as though he had died intestate. This question depends upon the construction of the statutes on this subject, as applicable to that clause in the will in which the *appellants* are mentioned. The statute of 1784 is a revision of the ancient statute, but does not repeal it ; they being, therefore, *in pari materia*, are to be considered and construed together ; and although the *act of* 1784 omits the preamble contained in the first *act*, yet I think it ought to be considered as applying to the new statute. I am of opinion *that any child or grandchild being noticed or mentioned [ * 151 ] in a will is sufficient, and that the statutes extend to cases of *entire omission* only. I am doubtful whether any legacy is given in this will to the *appellants ;* but I do not think it necessary to decide that question ; for whether there be or not, upon what I think is the true construction of the statutes, the *appellants* are not entitled to come in for distribution ; and, therefore, the decree of the judge ought to be affirmed.

SEDGWICK, J. Upon looking into the will, it appears to have been made with great deliberation. The testator disposes of all his worldly property ; expresses great solicitude and anxiety for his family ; and he seems to have done every thing for them which he thought it possible for him to do. To decide the question before the Court, it will be useful to go back to the determination of the legislature on this subject. As the *statute* of 1700 was a new law, abridging the right which persons had to dispose of their property by will, it could not extend to grandchildren until the legislature had expressly declared it. Having declared it, the case of grandchildren is to be considered as coming within the reasons of the provisions. Those reasons are stated in the preamble, and ought, in my opinion, to limit and restrain the enacting clause, in the manner stated by my brother, (*Sewall*, J.) I have no doubt that the law of 1784 was for the same purpose as the other statute, and that it was not intended to narrow the power of disposing of property by will, but left *that* power precisely as it stood previous to the statute. Look at the will. The grandchildren were not excluded from the mind of the testator. He had not forgot them. He makes a complete disposition of all his property. This shows that

he did not intend his grandchildren should come in for their equal proportion. I am not prepared to say that there is [ * 152 ] * not a legacy given them; but, on the contrary, I am inclined to think there is, and that the sum is five dollars, *that* sum being mentioned and given to each of the testator's daughters named in the same clause with the grandchildren, the *appellants.* Whether this be so or not, I think, for the reasons given, that the *appellants* are not entitled to a distributive share, and, therefore, that the decree of the judge of probate must be affirmed.

STRONG, J.   I concur with my brothers in the construction of the statutes, for the reasons which they have given. The testator did not forget his grandchildren. He mentioned them in his will. He could not, therefore, intend that they should come in for a share of his estate, as though he had died intestate. He intended to give them a legacy; and although he has obscurely expressed that intention, yet, if it can be discovered from taking the whole will together, the Court will do it. It is obvious that he intended to dispose of all his property; most of it to his two sons and one favorite daughter, who had been, as he expresses it, a kind and tender nurse to him, night and day, in his long confinement. To his other daughters he gives small legacies. It is presumable that they had had nearly their share at the time of their marriage. But he intended to give something to his grandchildren, the *appellants*; and I think it may fairly be presumed that he intended to give them five dollars, they being the children of a daughter who had already received her portion; and these grandchildren of the testator being in the same reason with the surviving daughters who are mentioned in the same clause and under the same *item,* and to each of which daughters he gave five dollars. I think, therefore, that the decree of the judge of probate ought to be affirmed. (1) (*a*)

*Decree affirmed.*

NOTE.   Quære as to the repeal of the first statute.—See *stat.* 1783, *c.* 24, § 20.

(1) Vide post, vol. iii. p. 17, *Church* vs. *Crocker.*
(*a*) [*Church* vs. *Crocker*, 3 *Mass.* 17.—*Wilder* vs. *Goss*, 14 *Mass.* 357. *-Wild & Ux.* vs. *Brewer*, 2 *Mass.* 570.—ED.]